IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NEW HOPE FELLOWSHIP, INC., | ) | Case No. 8:04CV259 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| THE CITY OF OMAHA, | ) | |
| NEBRASKA, | ) | |
| | ) | |
| Defendant. | ) | |

Despite the fact that this case has been transferred to Judge Dawson for trial, I retained the case to rule upon pending summary judgement motions.  In this opinion, I deny the summary judgment motions.  In addition, I disapprove a related, written stipulation of the parties.

However, and given the attempt at settlement represented by the stipulation, I also urge the parties to settle their dispute.  In this context, I will require the parties to certify to Judge Dawson that they have expended concerted efforts to resolve this matter without further court intervention.

I also confirm that part of one claim has been withdrawn.  I will enter an order so stating.

Finally, and so that Judge Dawson is aware of my decision (and views), the Clerk of Court will be directed to provide him with a copy of this memorandum and order.  Although summarily, the reasons for these rulings are set forth below.[1]

---

[1]In addition to the pleadings, briefs and evidentiary submissions, this opinion is informed by a long and candid telephone conference that I held with the lawyers on August 26, 2005.  In that conference, and among other things, I probed the basis

## I.  BACKGROUND

### A.  The Complaint

New Hope Fellowship, Inc., (New Hope) sues the City of Omaha, Nebraska (Omaha) asserting three counts, to wit: (1) Omaha intentionally discriminated against New Hope (Count I); (2) Omaha intentionally denied New Hope a reasonable accommodation (Count II); and (3) Omaha's zoning ordinances are discriminatory on their face and as applied (Count III).  (Filing 1 ¶¶ 9-48 (Complaint).)  New Hope seeks declaratory, injunctive and monetary relief.  (Id. at pages 13-15.)

The essence of the complaint is that New Hope sought from Omaha an application to occupy a home for the purpose of operating a residential treatment center for individuals recovering from alcohol and drug addiction.  (Id. at ¶¶ 8-27.)  Omaha requires a special use permit before such a facility may be operated.  Omaha failed to grant New Hope a special use permit.  As a result, New Hope claims that the Fair Housing Act, 42 U.S.C. § 3601, et seq., the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., were violated.  (Id. at ¶ 1.)

### B.  The Summary Judgment Motions

### 1.  New Hope's Motion for Partial Summary Judgment

On June 3, 2005, New Hope filed a motion for partial summary judgment. (Filing 46.)  The partial motion was directed at its claim that Omaha had failed to grant it a reasonable accommodation (meaning, essentially, a variance or waiver of

---

for the summary judgment motions and the meaning of the stipulation.

a spacing requirement in the zoning provisions) when Omaha denied the special use permit.

One of the pivotal, fighting issues was whether it was unreasonable to deny New Hope a special use permit based upon a "separation requirement." As I understand it, the "separation requirement" (established in an ordinance) stipulated that the distance between a proposed group home[2] and an existing group home must be at least one-half mile. (Filing 47 at 8 (Pl.'s Br.).) New Hope believed that an accommodation (waiver or variance) from this requirement was reasonable because group homes like the one proposed were undisputably needed, and there was no evidence before Omaha's City Council to prove otherwise.

Omaha argued that New Hope had failed to seek a waiver of the spacing requirement from the Zoning Board and instead sought City Council approval of a special use permit without the necessary prerequisite of a Zoning Board waiver of the spacing requirement. (Filing 45 at 8, 21-26 (Def.'s Br.).) New Hope replied that it would have been futile to go before the Zoning Board because the City Council did not base its decision upon the lack of Zoning Board approval and the City Council would have denied the special use permit even if the Zoning Board had granted a waiver. (Filing 51 at 11-17 (Pl.'s Br. In Opp'n to Def.'s Mot. for Summ. J.).)

### 2. Omaha's Motion for Summary Judgment

Omaha also filed a motion (filing 43) for summary judgment on June 3, 2005. Unlike New Hope's partial motion, Omaha's motion pertained to all the claims.

---

[2]The parties speak of "group care facilities" and "group homes" and they imply that there are important differences between the two. I use the phrase "group home" in its broad, generic sense without reference to specialized terms set forth in the ordinances and zoning regulations or as fought over by the lawyers.

In particular, Omaha argued that: (1) it did not unlawfully discriminate against New Hope (filing 45 at 13-21 (Def.'s Br.); (2) the "reasonable accommodation claim" was not ripe (because New Hope failed to obtain the Zoning Board's waiver before going to the City Council) (id. at 21-26); and (3) the ordinances are not unlawfully discriminatory on their face or as applied (id. at 26-29). New Hope responded by arguing that (1) New Hope's claims of intentional discrimination present issues of material fact for the trier of fact regarding the true motivations of Omaha (filing 51 at 17-34 (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. Judg.); and (2) New Hope's reasonable accommodation claim was ripe.  (Id. at 7-17.)

## C.  The Stipulation

On August 22, 2005, and without any explanation of how the document might impact the pending motions for summary judgment, the parties filed a "Stipulation." (Filing 56.)  That stipulation reads as follows:

> COME NOW the Plaintiff New Hope Fellowship, Inc. ("New Hope") and the Defendant City of Omaha ("City"), and in partial settlement of some of the issues pending in this action, stipulate to the following:
>
> 1.   If New Hope submits an application to operate a home in the City with a use that is the same or substantially similar to the use described in its application to operate the home at 101 North 39th Street, the parties agree to the following:
>
>    (a)   The City shall classify the proposed use as "group residential" as that term is defined by section 55-43 in the Omaha Municipal Code ("Code");
>
>    (b)   If New Hope certifies that it will have staff in the home at all times residents are present, the City shall treat the proposed use as an owner-occupied dwelling for purposes

of sections 55-367 and 55-327 and other similar sections of the Code, if applicable; and

(c)     If New Hope submits an application as described in this section 1, New Hope agrees not to house any person who has been sentenced and is under a program as an alternative to imprisonment (including, but not limited to, pre-release, work-release, or probationary programs).

2.     If the Court grants summary judgment in favor of New Hope on any of its claims, then the parties agree as follows:

(a)     The City pays New Hope $10,000 in damages;

(b)     The City pays New Hope attorney fees and costs in the amount of $80,000; and

(c)     New Hope agrees to dismiss any and all claims with prejudice and release the City from any and all claims it may have against the City arising from its application to operate a home at 101 North 39th Street.

(Id.)

## D.  The Telephone Conference

The stipulation was confusing.  I detail here only three of my primary concerns, although I had several others.

First, it was unclear what to do with Omaha's motion for summary judgment, especially in light of the fact that paragraph 1 of the stipulation seemed to give New Hope most of the relief it sought and there was no mention in the stipulation of how this relief was intended to impact Omaha's motion for summary judgment.  Second, paragraph 2 of the stipulation seemed to wrongly assume that New Hope had filed a motion for summary judgment on all claims, when, in fact, New Hope had filed a

partial summary judgment motion on only one claim. Third, and because of the problem just noted, it was unclear what, if anything, the court was to do with the remaining claims asserted by New Hope and for which New Hope had submitted no motion for summary judgment.

As a result of my uncertainty, I held a telephone conference with counsel. While counsel were candid and helpful, it was clear that the stipulation could not be enforced by the court without the document being rewritten and clarified.

In some detail, I also queried the parties on the substance of their motions for summary judgment. During the question and answer session, New Hope's counsel conceded that his client's claim that Omaha's zoning ordinances are discriminatory on their face should be withdrawn.

## II. ANALYSIS

### A. Denial of Motions for Summary Judgment

The motions for summary judgment will be denied. First, discrimination claims are almost never susceptible to summary judgment, and that is the case here respecting Counts I and III.

Second, and regarding the "reasonable accommodation" claim (Count II), there are two reasons why the motions must be denied. One reasons has to do with the parties' inconsistent and changing legal positions about the relevance of the City Council's motivation, and the other has to do with a dispute of historical fact.

The plaintiff asserted in its complaint that the failure to grant New Hope a reasonable accommodation was "intentional, wilful, and taken in disregard of the rights of others." (Filing 1 ¶ 40.)  Yet New Hope takes the position in its summary

judgment motion that the motivation of the City Council is irrelevant.  In this same vein, and during the telephone conference, when I queried counsel for Omaha about whether the motivation of the City Council was material to the question of a reasonable accommodation, he was equivocal.  In short, summary judgment ought not be granted to either party where both parties' legal positions are potentially contradictory and inconsistent.

Still further, there is a dispute of historical fact.  That is, whether New Hope was told to seek a waiver from the Zoning Board in advance of going to the City Council and whether the City Council used this apparently reasonable requirement as a pretext to deny the special use permit.  For example, New Hope asserts that the "City's claim that it 'directed' New Hope to seek a waiver from the Zoning Board in advance of the City Council vote on the special use permit is simply false."  (Filing 51 at 14 (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. Judg).)

## B.  Withdrawal of Claim

During the telephone conference, plaintiff's counsel withdrew the claim that Omaha's zoning ordinances are discriminatory on their face.  I shall enter an order confirming that withdrawal.

## C.  Disapproval of Stipulation

With sincere respect for the very competent lawyers in this case, the stipulation cannot be approved.  It is too ambiguous and cannot be enforced by this court without resort to extraneous, extra-record materials (like the lawyers' oral clarifications).  Accordingly, I shall enter an order disapproving the stipulation and holding it for naught.

### D.  Settlement

Even though I disapprove the stipulation, it is apparent from that document that the parties are close to a full settlement.  Indeed, it is my strong belief that this case should be fully settled without any further court intervention.  Accordingly, the parties[3] and their counsel will be ordered to meet and confer on settlement and the lawyers will be required to advise Judge Dawson of the results.

IT IS ORDERED that:

1.  The motions for summary judgment (filings 43 and 46) are denied.

2.  The plaintiff's claim that Omaha's zoning ordinances are discriminatory on their face is withdrawn.

3.  The Stipulation (filing 56) is disapproved and held for naught.

4.  On or before September 30, 2005 a representative with full settlement authority from the plaintiff and a similar representative from the defendant together with counsel for the plaintiff and counsel for the defendant shall personally meet and confer regarding settlement.  Thereafter, and on or before October 7, 2005, counsel for the plaintiff and counsel for the defendant shall jointly advise Judge Dawson and Judge Piester in writing (a) whether the required meeting was held with the required persons in attendance, and (b) whether this case may be resolved without further intervention by the court, that is, whether the case has settled.

---

[3]In addition to the attendance of the lawyers, each party must have a representative from that party with full settlement authority attend the settlement session.

5.  The Clerk of the Court shall provide Judge Dawson and Judge Piester with a copy of this memorandum and order.

6.  The motions for summary judgment having been denied, and this case having been transferred to Judge Dawson for trial, the undersigned shall have no further responsibility for this file.  All further pleadings and questions will be addressed either by Judge Dawson or Judge Piester.

August 30, 2005.                      BY THE COURT:

                                      *s/Richard G. Kopf*
                                      United States District Judge