IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NEW HOPE FELLOWSHIP, INC., | | PLAINTIFF |
| v. | 8:04CV259 | |
| CITY OF OMAHA, NEBRASKA | | DEFENDANT |

**FINAL ORDER**

Currently before the Court are Plaintiff's motion for attorney's fees (Doc. 78.), Defendant's response (Doc. 89), Plaintiff's bill of costs (Doc. 75), Defendant's objection to bill of costs (Doc. 85), and Plaintiff's reply to Defendant's objection to bill of costs (Doc. 86).  The Court will also address injunctive relief and damages.

**Injunctive Relief.**

In our order of December 22, 2005, we enjoined the Defendant to grant Plaintiff any and all necessary permits to operate a group home at 101 North 39th Street, Omaha, but the matter was continued for 120 days to permit Plaintiff the opportunity to purchase the subject property.  Plaintiff has been unable to purchase the property at 101 North 39th Street, Omaha, Nebraska.  However, the Court finds it necessary to grant injunctive relief should Plaintiff purchase another home.

Defendant, its departments, commission, board, councils, agents, employees, assigns and all other persons in active concert

or participation with it, are enjoined from violating any provision of the Fair Housing Act, as amended, 42 U.S.C. § 6301, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*

Upon application by Plaintiff for a permit to operate a group home in Omaha, Nebraska, the Defendant shall grant Plaintiff all necessary permits or other permissions to operate the home, and the Defendant is enjoined from otherwise interfering with Plaintiff's operation of such home, with the exception that the Defendant reserves the right to assure that the home is operated according to all codes and other legal requirements. The Defendant shall not enforce any legal restriction in a manner that discriminates against the Plaintiff, its residents, or persons associated with those residents, on the basis of disability including, but not limited to, imposing the separation requirement of Omaha Municipal Code § 55-764(c)(1) or similar provision.

Defendant shall take such affirmative steps as may be necessary to eliminate the effects of the Defendant's unlawful practices described herein, to include:

    (a)  Within one hundred eighty (180) days of the entry of the Court's Order, the Defendant shall adopt a reasonable accommodation procedure that allows persons with disabilities and housing providers for persons with disabilities to request accommodation in connection with

     their requests to construct, use or operate housing in the City of Omaha.

(b) Within ninety (90) days after the entry of the Court's Order, all Omaha City Council members, all members of Omaha's Planning Board and all Omaha employees whose job duties include reviewing and/or recommending approval of permits to operate housing in the City cods, shall be informed of his/her duties and obligations under the Court's order as well as under the FHA, Section 504, and the ADA. They shall also be provided a copy of the federal Fair Housing Act.

(c) The Defendant shall provide written notice to all persons who seek a permit to build, use or operate housing in the City of Omaha that the City does not discriminate on the basis of disability in housing and that the City has a procedure for requesting a reasonable accommodation and whom they must contact to receive information regarding the reasonable accommodation process.

(d) The Defendant shall retain all records relating to implementation of all provisions of the Court's Order.

(e) The Defendant shall be responsible for all reasonable fees and costs associated with complying with the Court's Order.

    (f)    The Defendant and Plaintiff shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with the Order prior to bringing such matters to the Court for resolution. However, in the event that the Defendant either fails to perform in a timely manner any act required by this Order or acts in violation of any provision of this Order, Plaintiff may move the Court to impose any remedy authorized by law or equity, including, but not limited to an order requiring performance or non-performance of certain acts and an award or any damages, costs, and attorneys' fees to any person, that may have been occasioned by Defendant's non-action or actions.

    (g)    The parties may mutually agree to extend the time period set out in this Order for any required action.

    (h)    The term of this Order shall be three (3) years and the Court shall retain jurisdiction of this action for purposes of enforcing this Order.

**Damages.**

Plaintiff was previously awarded $2,263.50 in compensatory damages for the losses incurred in preparation of purchasing the Home. The Court further awards Plaintiff the $2,000 escrow amount provided this amount has not previously been returned to Plaintiff.

**Attorneys' fees**.

Plaintiff is the prevailing party in a suit against the Defendant filed under the Fair Housing Act, as amended, 42 U.S.C. 3601, et seq. ("FHA"), the Americans with Disabilities Act, 42 U.S.C. 12131, et seq. ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. 794, et seq. ("Section 504").  We previously found the Defendant failed to grant Plaintiff a reasonable accommodation to operate a group home for persons recovering from alcoholism and/or drug addiction.  We found Plaintiff was entitled to reasonable attorney's fees and costs.  Plaintiff seeks $170,842.00 in attorney's fees and costs as calculated by the Lodestar analysis plus a 50% enchancement because of the complexity of the case, the extraordinary results achieved, and the obstinacy of the City officials.  The total amount requested by Plaintiff is $258,448.12.  Defendant contends the amount is excessive.

**Reasonableness of fee requested**.

The Fair Housing Amendments Act, 42 U.S.C. 3613(c)(2), provides "the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee and costs."  The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  "The district court's determination respecting fees is reversible only if the court abused its discretion."  *Hendrickson v. Branstad,* 934 F.2d

158, 162 (8th Cir. 1991). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id*. at 437, 103 S.Ct. 1933. The district court should exclude from this initial fee calculation hours that were not "reasonably expended" including hours that are excessive, redundant, or otherwise unnecessary. *See Id*. at 434, 103 S.Ct. at 1939, quoting S. Rep. No. 94-1011, p. 6 (1976).

Plaintiff seeks compensation based on the following hourly rates: $300 per hour for Scott P. Moore, a partner at Baird Holm LLP, in Omaha, Nebraska, with 11 years legal experience; $280 per hour for D. Nick Caporale, of counsel at Baird Holm with prior experience as a Nebraska Supreme Court Justice; $265 per hour for Christopher R. Hedican, a partner at Baird Holm with 16 years legal experience; $160 per hour for Allison D. Balus, an associate with Baird Holm with 4 years legal experience; $150 per hour for Mark P.A. Hudson, an associate at Baird Holm with 3 years legal experience; and $100 per hour for Sharada A. Rajappa, a paralegal at Baird Holm with an unknown amount of paralegal experience.

Plaintiff submits the affidavits of Mr. Moore to support the experience and qualifications of the individuals. Plaintiff

submits the affidavit of Kathleen McCallister to reflect what was represented to her as the attorneys' hourly rates at the beginning of the litigation. Plaintiff also submits the affidavits of Reed N. Colfax,, a Washington, D.C. attorney, and Bert M. Guy, an Alabama attorney, to establish that $300 per hour is a reasonable rate for an attorney with Mr. Moore's experience in Fair Housing litigation. Defendant submitted the affidavit of William M. Lawson, Jr., a Nebraska attorney, to establish that a reasonable hourly rate in the community for an attorney with Mr. Moore's experience would be between $175 and $225, and a reasonable hourly rate for an attorney with Mr. Hudson's experience would be between $75 to $125.

A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. *Emery v. Hunt*, 272 F.3d 1042, (8th Cir. 2001). Plaintiff contends the market is not simply defined by the local geographic area in which the case was litigated. *See Casey v. City of Cabool, Missouri*, 12 F.3d 799 (8th Cir. 1994). "A national market or a market for a particular legal specialization may provide the appropriate market." *Hendrickson v. Branstad*, 740 F.Supp. 636, 642 (N.D. Iowa 1990) (reversed on other grounds, *Hendrickson v. Branstad*, 934 F.2d 158 (8th Cir. 1991)).

Mr. Moore has requested a rate of $300 per hour. Mr. Moore is a partner with Baird Holm, a law firm located in Omaha, Nebraska.

He graduated from Creighton University Law School in 1995 and was an associate with Baird Holm from 1995 to April 1998. He then worked for the Housing and Civil Enforcement section of the Civil Rights Division of the United States Department of Justice in Washington, D.C., as a senior trial attorney. He served as lead counsel in numerous Fair Housing Act pattern or practice cases throughout the country. He returned to Baird Holm in 2003 and currently represents clients in Fair Housing Act matters across the United States. Plaintiff contends Mr. Moore is entitled to $300 per hour rate because of his specialized experience.

Reed N. Colfax, an attorney at Relman & Associates in Washington, D.C., with nine years experience litigating Fair Housing cases, testified by affidavit that an attorney with Mr. Moore's experience would bill $350 at his firm. Bert M. Guy, a partner at the law firm of Tanner & Guin in Tuscaloosa, Alabama, with 17 years experience litigating Fair Housing cases who bills $315 per hour, testified by affidavit that Mr. Moore's rate is substantially lower than rates charged by other attorneys with as much experience and knowledge of Mr. Moore.

Defendant argues Plaintiff failed to establish the prevailing market rate in the Omaha community by submitting affidavits from out-of-state attorneys. Defendant counters with the affidavit of William M. Lawson, Jr., a partner in the law firm of Lamson, Dugan, and Murray, who currently represents the City of Omaha at the rate

of $200 per hour.  Mr. Lawson testified by affidavit that a fair and reasonable hourly rate in the community for Mr. Moore would be between $175 and $225 per hour.

As Defendant points out, most of the relevant facts were undisputed and stipulated, the length of trial was one and one-half days, and the case lasted only 16 months.  We believe this was, in part, because of Mr. Moore's experience in litigating Fair Housing cases.  We find his rate of $300 per hour to be appropriate and reasonable.

Mr. Hudson has requested a rate of $150 per hour.  He graduated from Drake University Law School in 2003 and has been an associate at Baird Holm since that time.  He has assisted Mr. Moore on several Fair Housing matters and participated in this trial. The affidavits of Mr. Colfax and Mr. Guy do not address a reasonable rate for Mr. Hudson.  Mr. Lawson, on the other hand, testified that a reasonable hourly rate in this community and other communities in the Midwest for an associate with less than 3 years experience such as Mr. Hudson ranges from $75 to $125.  We find that a reasonable rate for an attorney with comparable skill and training as Mr. Hudson is $125 per hour and reduce his requested fee accordingly.  We further reduce the $160 per hour request for Allison Balus, an attorney with four years legal experience, to $125.

Mr. Caporale requests a fee of $280.00 per hour. He has been with Baird Holm since 1998 and is a former Nebraska Supreme Court Justice. When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates. *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004). We find that $250 per hour is a reasonable rate for Mr. Caporale.

Mr. Hedican requests a fee of $265 per hour. He has been practicing since 1990 and has significant experience in litigating employment discrimination claims. We find that $250 per hour is a reasonable rate for Mr. Hedican.

Ms. Rajappa requests a fee of $100 per hour. Defendant contends that paralegal services are essentially overhead expenses and are presumed to be included in an attorney's hourly rate. The United States Supreme Court has approved an award for paralegal fees, *see Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) and the Eighth Circuit has affirmed a fee award of paralegal time billed separately. *See Fish v. St. Cloud State University,* 295 F.3d 849, (8th Cir. 2002) (affirming a fee award that included 789.20 hours of work by paralegals); *Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704, (8th Cir. 2002) (affirming a fee award that included 20 hours of work by a paralegal). We find $100 per hour to be excessive. Based on our review of current case law, we find that $50 per hour is a reasonable rate for a paralegal.

**Reasonableness of hours requested.**

Plaintiff requests a fee for 697.4 hours expended in this case. Defendant contends 400 to 450 hours is reasonable because most of the relevant facts were undisputed and stipulated in the order on final pretrial conference; the trial lasted one and one-half days; there were two depositions and no expert witnesses; and the case was pending only 16 months.

Defendant specifically objects to the number of hours used in preparation of witness Kirsten Halberg. Preparation of her testimony was billed at 12.4 hours: 10.1 hours to Mr. Hudson and 2.3 hours to Mr. Moore. Mr. Hudson spent his time preparing for the direct examination and meeting with Ms. Hudson. Mr. Moore spent his time in one meeting with Ms. Halberg. Defendant contends Ms. Halberg was a minor witness who briefly testified. We agree the number of hours to be excessive. We deduct Mr. Moore's hours and reduce Mr. Hudson's hours to 5.0 hours. We find 5.0 to be a reasonable amount of time for the preparation of a minor witness.

Defendant contends the 18.9 hours spent by Mr. Moore in preparation for the deposition of Rod Phipps, former manager of the City Planning Division, is excessive. The deposition of Mr. Phipps took 6.7 hours. Mr. Moore billed 15.1 hours for the preparation of Mr. Phipps' direct and cross-examinations. We find that 18.9 hours for preparation of a deposition by an experienced attorney, such as Mr. Moore, is excessive. We reduce the number of hours to 10.7.

Defendant further objects to the preparation of a motion to withdraw facial challenge to the ordinance for which Mr. Moore billed 1.1 hours. The motion was never filed. In a telephone conference with Judge Richard G. Kopf, Plaintiff's counsel "conceded that his client's claim that Omaha's zoning ordinances are discriminatory on their face should be withdrawn." (Doc. 57 p. 6.) The Court entered an order that "the plaintiff's claim that Omaha's zoning ordinances are discriminatory on their face is withdrawn. (Doc. 57 p. 8.) We find the hours billed in preparation of that motion to be unnecessary and reduce accordingly.

Defendant objects to the 19.6 hours regarding the Zoning Board application which Plaintiff later withdrew. Mr. Moore requests 6.2 hours; Mr. Hudson requests 13.2 hours; Ms. Rajappa requests .2 hour. The Zoning Board application was not a mandatory prerequisite to filing Plaintiff's claim. Time spent pursing optional administrative proceedings is properly included in fees only if the work was "useful and of a type ordinarily necessary to secure the final results obtained." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Plaintiff abandoned the Zoning Board application after the City Council voted to deny the special use permit. Because Plaintiff abandoned the application, we cannot say the work was "useful and of a type ordinarily necessary to

secure the final results obtained." *Id*. We deduct the hours accordingly.

Defendant objects to 91.8 hours for efforts in obtaining the special use permit. Mr. Moore requests fees for 46.1 hours. Mr. Hudson requests fees for 14.5 hours. Ms. Rajappa requests fees for .6 hour. Defendant argues that because those efforts would have been expended regardless of how the City Council ruled, it would be unreasonable and unfair to award fees associated with processing the permit. We do not agree, for if Plaintiff had been successful in obtaining the permit, there would have been no lawsuit. We find the work useful and necessary. *See id*.

Plaintiff spent 83.2 hours on summary judgment briefs. Mr. Moore billed 66.2 hours and Mr. Hudson billed 17 hours. Because this case involved issues with which Plaintiff's experienced counsel was familiar, we find 83.2 hours to be excessive. We reduce the number of hours by 30% leaving Mr. Moore with 46.34 hours and Mr. Hudson with 11.9.

Plaintiff spent 12.6 hours for legal research. Defendant argues these hours should be subtracted because there is no evidence of what subjects and issues were researched or whether the results were incorporated into a brief, motion, or pleading in violation of NECivR 54.4, which states that a fee application must "[i]dentify with particularity the work done...(B) for research, state who did it, the subjects and issues were researched, and

whether the results were incorporated into a brief, motion, or pleading." There are two entries for "legal research standing issue to rebut City's assertions" dated October 13, 2005 that total 2.2 hours for Mr. Hudson. This time will be deducted. We find the other entries adequately describe the work performed.

Defendant objects to 3.5 hours Mr. Moore billed regarding the purchase of the property. Mr. Moore spoke twice to the property owner and wrote two letters to Security National Bank. Defendant argues such items involving the sale did not involve efforts regarding the City or the litigation and should be excluded. We agree and eliminate those hours.

Plaintiff spent 3.1 hours discussing the issues with local newspaper reporters or reading articles in the local newspaper. Mr. Moore billed 1.4 hours and Mr. Hudson billed 1.7 hours. Defendant argues these entries are unreasonable and unnecessary and should be excluded. We agree and eliminate those hours.

Plaintiff spent 1.3 hours creating a spreadsheet to educate the client. Defendant argues this spreadsheet appears to be related to general, universal advice as to possible sites throughout the City and not necessary for this litigation. We disagree. The spreadsheet was created at a time when settlement negotiations were on-going. We find the work useful and reasonable.

Plaintiff billed 7 hours for a paralegal at $100 per hour. Nebraska Civil Rule 54.4(a)(3) provides: If a paralegal...performed any services, state the salary or other wage rate at which the attorney or law firm pays the paralegal. Defendant argues these hours should be excluded for non-compliance with the statute and are presumed to be included in an attorney's hourly rate. Only one of Ms. Rajappa's hours was spent on legal research. The rest of her time was spent making phone calls, copying documents, and running errands. These are duties that could be performed by one other than a paralegal at a rate significantly lower than $50 per hour. We eliminate all but the one hour of legal research.

**Calculation of the lodestar.**

The total fee awards based on a lodestar calculation are as follows:

| | | |
|---|---|---|
| Scott P. Moore | $119,472.00 | (398.24 hours x $300) |
| Mark P.A. Hudson | $ 24,225.00 | (193.8 hours x $125) |
| Allison D. Balus | $   2925.00 | (23.4 hours x $125) |
| Sharada A. Rajappa | $     50.00 | (1 hour x $50) |
| D. Nick Caporale | $    375.00 | (1.5 hours x $250) |
| Christopher R. Hedican | $    900.00 | (3.6 hours x $250) |
| TOTAL | $147,947.00 | |

The lodestar award presumptively is a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

Plaintiff seeks a 50% enhancement of the attorneys' fees because of the complexity of the case, the excellent results obtained, and the obstinacy of the City officials in ignoring federal law. An upward adjustment to an attorney's lodestar hourly rate is permissible "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). "Because the lodestar amount may already compensate the applicant for exceptionally good service and results, however, the fee applicant must do more than establish outstanding service and results. The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended." *In re Apex Oil Co.*, 960 F.2d 728, 732 (8th Cir. 1992).

Plaintiff contends it had to sort through the City's Municipal Code to understand the complexities of land use laws. We took into consideration Mr. Moore's skill and experience when we approved his requested rate of $300 per hour. Therefore, we do not consider the complexity of the case or the novelty of the issue in determining whether to increase the lodestar amount. *See Blum v. Stenson*, 469 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Plaintiff further contends it had to put on evidence of the surrounding uses of the property to articulate a convincing argument that there would be no fundamental alteration.  We would expect counsel to articulate a convincing argument on behalf of his client regardless of the facts.  We do not find Plaintiff's counsel provided services that were superior to what should have been expected.

Plaintiff contends it achieved excellent results because its primary purpose was to secure a permit in order to operate a group home which was achieved.  Plaintiff filed three claims against the Defendant: intentional discrimination, failure to make a reasonable accommodation, and the zoning ordinance was discriminatory on its face and as applied.  The claim regarding the zoning ordinance was withdrawn prior to trial.  The Court dismissed the intentional discrimination claim.  Plaintiff prevailed only on the failure to make a reasonable accommodation claim.  While Plaintiff was successful in its lawsuit, the results achieved do not warrant a fee enchancement.

Plaintiff further contends it should be awarded a fee enchancement because of the City's obstinacy that forced Plaintiff to pursue litigation.  Our review of the case law shows us that, absent statutory authorization, federal courts have equitable power to grant attorney's fees when the defendant has acted in bad faith or has been obdurate and obstinate during the controversy.  *See*

*Fowler v. Schwarzwalder*, 498 F.2d 143 (8th Cir. 1974).  We do not find that the Defendant acted in bad faith during the time that preceded the lawsuit, nor do we find that Defendant acted obdurate or obstinate during the controversy.  In fact, the City entered into nine pages of stipulated facts and cooperated fully during the trial.  Plaintiff has failed to convince the Court that it is entitled to a fee enhancement.

**Costs.**

Plaintiff requests reimbursement of costs of $2,185.12 "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charted to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d at 763 (internal citations and quotations omitted).

The costs are comprised of $150 filing fee, $1,188.75 for depositions, $90 for witness fees, and $756.37 for long distance phone charges, courier services, and copying charges.  Defendant objects to the deposition fees of $1,188.75 for failing to comply with the Court's Bill of Costs Handbook, Section IIB, that requires the prevailing party to furnish evidence that the deposition was reasonably necessary to the development of the case at the time the deposition was taken.  Plaintiff replied to Defendant's objection (Doc. 86) stating that both parties utilized the deposition of Kathleen McCallister.  Plaintiff further stated that Rod Phipps deposition as a Rule 30(b)(6) representative was reasonably

necessary to the development of the case. We agree and will allow the $1,188.75 in deposition fees.

We disallow the $10 requested in witness mileage fees because Plaintiff failed to comply with the Bill of Costs Handbook II.C.1.b. by not reflecting the number of miles or mileage rate.

Defendant objects to $590.75 in photocopies and telecopy charges and $12.85 in long distance phone calls. Nebraska Civil Rule 54.4(b) states:

> (1) For photocopies, state what items were copied, why they were copied, what use was made of them, and how many pages of material were photocopied.
> ...
> (3) For long distance telephone calls, list the date, by whom, to whom, and where calls were made, and the subject of the call.

Plaintiff's billing statement does not comply with either rule. Therefore, we disallow the $590.75 in copying charges and $12.85 in long distance charges.

**Conclusion.**

The Court enjoins the Defendant as explained herein. The Court awards damages of $2,000 against the Defendant provided the escrow amount has not previously been returned to Plaintiff, in addition to the previous award of $2,263.50. Because Plaintiff was unable to purchase the home located at 101 North 39th Street, Omaha, Nebraska, the Court will not award any damages associated with the purchase price. The Court awards fees against the Defendant in the

amount of $147,947.00 and costs against the Defendant in the amount of $1,571.52.

IT IS SO ORDERED this 17th day of May, 2006.

/s/Robert T. Dawson
Hon. Robert T. Dawson
United States District Judge